UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INA ANN RODMAN,<br><br>Plaintiff,<br><br>v.<br><br>OTSUKA AMERICA PHARMACEUTICAL, INC.,<br><br>Defendant. | Case No. 18-cv-03732-WHO<br><br>**ORDER DENYING MOTION TO DISMISS; GRANTING MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 29, 33, 34 |

Plaintiff Ina Ann Rodman ("Rodman") brings suit against Otsuka America Pharmaceutical, Inc. ("Otsuka") for injuries related to her use of Abilify, Otsuka's pharmaceutical. Otsuka moves to dismiss Rodman's first amended complaint ("FAC"), arguing that Rodman's claims are time barred by California's two-year statute of limitation because in her initial complaint, Rodman stated that she developed symptoms of Tardive Dyskinesia in January 2016 but did not file suit until March 28, 2018.

In the FAC, Rodman states that she was not diagnosed with, or made aware of, her Tardive Dyskinesia symptoms until on or after March 30, 2016. Rodman supports this changed allegation with medical records. I find Rodman's claims to be plausible and her explanation for amending the allegations related to the statute of limitation to be credible, and deny Otsuka's motion to dismiss. The hearing set for November 7, 2018 is vacated.

## BACKGROUND[1]

### I. FACTUAL HISTORY

Rodman was prescribed the pharmaceutical Abilify between the fall of 2010 and the fall of

---

[1] I accept Rodman's allegations in the FAC as true for the purposes of this motion.

2015 to treat her depression. FAC [Dkt. No. 28] ¶¶ 1, 18. On or about May 19, 2016, she was diagnosed with Tardive Dyskinesia and informed that it was related to her use of Abilify. *Id.* ¶ 19. Tardive Dyskinesia is a serious and irreversible neurological condition that is characterized by repetitive involuntary purposeless movements. *Id.* ¶ 10. It is known to be caused by anti-psychotic drugs. *Id*.

Otsuka manufactures, markets, advertises, and distributes Abilify, which was first approved by the Food and Drug Administration for the short-term treatment of schizophrenia in 2002. *Id.* ¶¶ 3, 5, and 7. Since then, Abilify has been approved for the treatment of several psychiatric disorders, including depression in 2007. *Id.* Its labelling includes a class warning for Tardive Dyskinesia, which states that Abilify is in the class of anti-psychotics that may lead to Tardive Dyskinesia. *Id.* ¶¶ 10, 25.

Otsuka contends that Rodman made a judicial admission when she stated in her initial complaint that she began to develop symptoms of Tardive Dyskinesia in January 2016. Motion to Dismiss [Dkt. No. 29] 6-7. Since Rodman did not file her complaint until March 28, 2018, Otsuka argues that her pleading is not timely under California's two-year statute of limitation on personal injury claims based on defective products and must be dismissed. *Id.*

In the original complaint Rodman stated that:

On or about January 2016, Plaintiff began to develop uncontrollable movements of her mouth. Plaintiff sought treatment from various health care providers and was eventually diagnosed with Tardive Dyskinesia in May of 2016. . . . On or about May 19, 2016, Plaintiff was informed that the Tardive Dyskinesia was related to her having taken Abilify.

Compl. ¶¶ 14-15. In the FAC, she omits any mention of symptoms beginning in January 2016 and states only that "[o]n or about May 19, 2016, Plaintiff was diagnosed with Tardive Dyskinesia and was informed that the Tardive Dyskinesia related to her having taken Abilify." FAC ¶ 19. Rodman argues that she omitted reference to symptoms developing in January 2016 in the FAC because it was an inaccurate assertion and she reported no facial abnormalities prior to March 30, 2018. Opposition 3-4 [Dkt. No. 32].

## II. PROCEDURAL HISTORY

Otsuka removed this case from Contra Costa County Superior Court on June 22, 2018. [Dkt. No. 1]. At the time of removal, Otsuka America, Inc. ("OAI") was also a named defendant. Complaint ("Compl.") attached as Exhibit A to Notice of Removal [Dkt. No. 1-1]. Otsuka argued that OAI was fraudulently joined to defeat diversity jurisdiction and moved to dismiss the complaint. *See e.g.* Notice of Removal ¶¶ 12-41; Dkt. No. 9. The parties then stipulated to dismiss OAI, Rodman filed the FAC, and Otsuka, again, moved to dismiss Rodman's FAC for failure to comply with California's applicable statute of limitations. [Dkt. No. 29].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In

making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I. CALIFORNIA STATUTE OF LIMITATIONS

Generally, an "action accrues on the date of injury." *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 926 (Cal. 1988). Otsuka argues that Rodman's sole claim for negligence is barred by California's two-year statute of limitation on personal injury claims based on defective products since in her initial complaint she stated that she began to develop symptoms of Tardive Dyskinesia in January 2016, but did not bring suit until March 28, 2018. Mot. 6-8 (*citing Jaeger v. Howmedica Osteonics Corp.*, 2016 WL 520985, at *9 (N.D. Cal. Feb. 10, 2016) (relying on Ca. Code of Civ. P. § 335.1)). In the operative FAC, Rodman omits any mention of symptoms in January 2016, stating that she was not diagnosed with symptoms of the condition until May 19, 2016, and that her symptoms were related to Abilify. FAC ¶ 19.

**a. Did Rodman Make a Judicial Admission?**

Rodman argues that her initial complaint was simply inaccurate and that no facial abnormalities were reported by plaintiff prior to March 30, 2018 at the earliest. Oppo. 3-4. Otsuka argues that Rodman should be held to her statements in her initial complaint because they constitute a judicial admission.

A statement in a complaint may serve as a judicial admission. *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859–60 (9th Cir. 1995). A judicial admission is an admission in a pleading which has "the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (internal quotation marks omitted). But a party may amend a judicial admission. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 960–61 (9th Cir. 2006). "Where . . . the party making an ostensible judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight." *Sicor*, 51 F.3d at 859–60. "However, where

4

a plaintiff fails to provide a credible explanation for its error, the Court can disregard the contradictory evidence. *O'Connor v. Boeing N. Am., Inc.*, 92 F. Supp. 2d 1026, 1040 (C.D. Cal.), modified on reconsideration, 114 F. Supp. 2d 949 (C.D. Cal. 2000), aff'd in part, rev'd in part, 311 F.3d 1139 (9th Cir. 2002) (internal quotation marks omitted).

Rodman argues that the first documented incident of irregular mouth movements occurred on March 30, 2016, when she was examined by Dr. Joseph Katz. Oppo. 3 citing Exhibit A to Motion. to Seal [Dkt. 33-4] at 3. She bolsters her argument by attaching medical records between January 2016 and her examination by Dr. Katz from Paramount Urgent Care and Dr. S. Dwight Vaught. [Dkt No. 33-4]. The Paramount Urgent Care record, dated January 25, 2016, states only that Rodman suffered from unspecified lesions of oral mucosa. Exhibit C to Mot. to Seal [Dkt. No. 33-4] at 2. The record by Dr. Vaught, dated February 5, 2016, diagnosed Rodman only with glossitis and dry mouth. Exhibit B to Mot. to Seal [Dkt. No. 33-4].

In its reply, Otsuka argues that the medical records show that Rodman exhibited symptoms of Tardive Dyskinesia at the appointments with Paramount Urgent Care and Dr. Vaught. Reply 2-4 [Dkt. Nos. 34-3, 35]. It contends that Rodman sought treatment for a tongue issue, and that Rodman's severe dry mouth, tongue soreness and irritation, and red lesions show that Rodman was aware that she was experiencing adverse side effects from her medications. *Id.* I disagree. Not all tongue issues are the same, and Tardive Dyskinesia involves involuntary tongue movement, not severe dry mouth, tongue soreness and irritation, or red lesions.[2]

Having considered both complaints and the evidence submitted by Rodman, I find her explanation of the error in the initial complaint to be credible. The medical records show that her putative judicial admission in her initial complaint was in error and that she did not exhibit symptoms of Tardive Dyskinesia until her appointment with Dr. Katz on March 30, 2016. *LegalForce RAPC Worldwide P.C. v. Swyers*, No. 17-CV-07318-MMC, 2018 WL 3159711, at *2 (N.D. Cal. June 28, 2018).

---

[2] Even if Rodman was suffering from involuntary tongue movement, it is unreasonable to suggest that she should have known that she had Tardive Dyskinesia without the diagnosis of a physician or that the cause of that diagnosis was her use of Abilify.

5

**b. The Discovery Rule**

California's discovery rule delays the accrual of a cause of action until a plaintiff either became aware of the injury and its cause or could have discovered the injury and cause through reasonable diligence. *Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 5117168, at *3 (N.D. Cal. Oct. 27, 2011) (citing *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal.4th 797, 808 (2005)). In order to rely on the discovery rule, "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* (internal quotation omitted). Under the discovery rule, the statute of limitations begins to run "when the plaintiff suspects or should suspect that her injury was caused by wrongdoing." *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110 (Cal. 1988). "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim." *Id.* at 1111, 245. "In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to show diligence; conclusory allegations will not withstand demurrer." *Fox*, 35 Cal.4th at 808 (internal quotations omitted).

Rodman has successfully pleaded that she filed suit within the applicable statute of limitation. Rodman saw three doctors for issues related to her mouth in between January 25, 2016 and March 30, 2016. [Dkt. No. 33-4]. It was not until the third of these appointments that Dr. Katz observed Dyskenisia of the tongue, despite two previous doctors checking on other issues related to her mouth in January and February. *Id.* No doctor diagnosed her with Tardive Dyskinesia or informed her that the disease is related to her use of Abilify until May 19, 2016. Her claims would appear to fall comfortably within the statute of limitation.

Otsuka argues that Rodman was placed on inquiry notice by Abilify's prescribing information, which included a page-long Tardive Dyskinesia warning and a medication guide that warned of "movements [that] you cannot control in your face, tongue, or other body parts." Mot. 8. Accepting the allegations in the FAC as true, the earliest Rodman could have been made aware of her symptoms was on March 30, 2016 and still within the statute of limitation.

At the very least, the question of when Rodman became aware of her injury so that the

statute of limitation would begin to run is a question of fact not susceptible to a motion to dismiss. *See Rose v. Fife*, 207 Cal. App. 3d 760, 770 (Ct. App. 1989) ("reasonability of a plaintiff's 'belated discovery' is a question of fact"). At this stage, I must draw all reasonable inferences in favor of Rodman. *See Usher*, 828 F.2d at 561. Given the facts alleged in the FAC and the medical records submitted by Rodman, I find Rodman's complaint timely for the purposes of a motion to dismiss. Otsuka's motion to dismiss the FAC is denied**.**

**II. MOTION TO SEAL**

Rodman seeks to seal her Memorandum in Opposition to Defendant's Motion to Dismiss [Dkt. No. 32] and the following exhibits to her opposition: Exhibit A, medical records of Dr. Joseph Katz dated March 20, 2016 [Dkt. No. 33-3], Exhibit B, medical records of Dr. S. Dwight Vaught dated February 5, 2016 [Dkt. No. 33-3], and Exhibit C medical records of Paramount Urgent Care dated January 2, 2016 [Dkt No. 33-3]. Motion to Seal [Dkt. No. 33]. Otsuka does not oppose Rodman's motion to seal. *Id.* at 1. As the filings Rodman seeks to seal contain her sensitive medical information, Rodman's motion to seal is granted.

Otsuka also seeks to seal its Reply as it references Rodman's medical records. [Dkt Nos. 34, 35]. For the same reasons as above, I grant Otsuka's motion to seal as well.

**CONCLUSION**

Rodman's explanation for amending her complaint to remove references to symptoms of Tardive Dyskinesia in January of 2016 is credible. Otsuka's motion to dismiss is denied**.**

I grant both parties' motions to seal as the materials at issue contain Rodman's sensitive medical information.

**IT IS SO ORDERED.**

Dated: November 6, 2018

William H. Orrick
United States District Judge

7